———————

CATHARINE McCABE, RESPONDENT, *v.* GEORGE J. KENNY, APPELLANT.

*Specific performance of a contract to sell real property — what is not a marketable title — escheat act, chapter 706 of 1871, unconstitutional.*

In proceedings to compel the specific performance of a contract for the sale of certain real estate it appeared that Matthew Leavy purchased the premises in question in 1833, and continued in the ownership thereof until the year 1837, when he died leaving a last will and testament, and two children and a widow surviving him. Both of the children died in infancy, leaving them surviving their mother, who died in 1850.

After Leavy's death his widow continued in the possession of the property, collecting the rents up to the time of her death, when Gilbert Leavy, a brother of the testator, came to this country and immediately took possession of the premises, and continued in the exclusive possession thereof down to the year 1871, collecting the rents of the property. He was naturalized in 1857. In 1871 Gilbert Leavy, being in possession of the property, conveyed the same to his daughter, Catharine McCabe, the plaintiff in this action, who remained in undisturbed possession thereof down to the time of the commencement of this action.

Subsequently a mortgage, which had been executed on the premises by Matthew Leavy, was foreclosed, to which Catharine McCabe and her husband, and the only heirs-at-law of Matthew Leavy living at that time, were made parties defendant, under the sale in which action Catharine McCabe became the pur-

chaser. Matthew Leavy had brothers and sisters, all of whom were residents of Ireland and unmarried, and Mrs. Leavy had a brother and a sister, the former of whom was never in this country; the latter of whom died in Connecticut, but whether before or after the death of Mrs. Leavy was not definitely established.

*Held,* that the adverse possession, claimed to be established in Gilbert Leavy and the plaintiff, depended upon a question of fact and also upon a doubtful question of law, there being no evidence that Gilbert Leavy was in possession of these premises, under a claim of title thereto, until he conveyed to the plaintiff in 1871, and that the title was not a marketable title such as the purchaser should be compelled to accept.

That chapter 706 of the Laws of 1871, entitled "An act to release the interest of the people of the State of New York in certain real estate to Catharine McCabe," was unconstitutional, there being no reference in the title of the act to the real object thereof.

*Johnston* v. *Spicer* (107 N. Y., 185) followed.

APPEAL from a judgment rendered at the New York Special Term, directing a contract for the sale of certain premises in the city of New York to be specifically performed, and entered in the office of the clerk of the county of New York on the 31st day of January, 1889.

*Payson Merrill,* for the appellant.

*Dougherty, Durnin & Hendricks,* for the respondent.

VAN BRUNT, P. J. :

The facts as found by the court below, briefly stated, are as follows : Matthew Leavy purchased the premises in question in 1833, and continued to be the owner thereof until the year 1837, in which year he died at the city of New York, leaving a last will and testament, which was duly admitted to probate. In view of the conclusion at which we have arrived, the terms of this will are entirely immaterial. The executors never qualified. He left him surviving two children and a widow, both of which children died in infancy, leaving their mother surviving, who died in the year 1850 or 1851. Matthew Leavy's parents died prior to his death. Mrs. Leavy had a brother named Peter, and two sisters, Ann Murtha and Elizabeth Hart, her only heirs-at-law. Peter never was in this country. Ann died in this city, prior to the death of Mrs. Leavy, unmarried. Elizabeth was married to John Hart, and died in Connecticut, but whether before or after the death of Mrs. Leavy is not definitely

established, but presumably after. Matthew had four brothers and two sisters, James, Gilbert, Bernard and John, and Mary and Ann; all of these were living at the time of the death of the survivor of Matthew's children, except James, who had died prior to Matthew, unmarried. At this time all of the above-named brothers and sisters of Matthew were residents of Ireland, and unmarried. After the death of Matthew, his widow continued in possession of the property and collected the rent up to the time of her death. In the year 1851 or 1852, a few months after the death of Mrs. Leavy, all the brothers and sisters of Matthew being still residents of Ireland and aliens, one brother, Gilbert Leavy, came out to this country, and immediately on his arrival took possession of the premises in question and continued in exclusive possession thereof down to the year 1871. During the whole of this period he remained in possession of the premises, and appropriated to the use of himself and some of his relatives the rents of the property. Gilbert was naturalized a citizen on the 22d of October, 1857, and from this fact it was claimed to be established that he must have come to this country prior to October, 1852. In the month of February, 1871, Gilbert Leavy, being then in possession of the property, assumed to convey the same to his daughter, Catharine McCabe, the plaintiff in this action, who immediately thereupon entered into the actual possession of said premises, and has remained in undisturbed possession thereof down to the commencement of this action. It is further found by the learned court that in April, 1871, by chapter 706, Laws of 1871, the State of New York released to said Catharine McCabe all its interest in the premises in question. The title of said act was "An act to release the interest of the people of the State of New York in certain real estate to Catharine McCabe."

Subsequently a mortgage was foreclosed which had been executed on the premises while Matthew Leavy was in possession thereof. Catharine McCabe and her husband, Bernard Leavy, Thomas Leavy, John Leavy and Elizabeth his wife, Ellen Leavy, and Mary Blake were made parties to the action. Said Catharine McCabe, Bernard Leavy, Thomas Leavy, John Leavy, Ellen Leavy and Mary Blake, the defendants, were all of full age and the only heirs-at-law of Matthew Leavy then living. Upon the sale in foreclosure Catharine McCabe became the owner. The court found that the plaintiff and

Gilbert Leavy, her grantor, had been in the actual continued occupation of the premises in question for upwards of thirty-six years past under claim of ownership. Although it is doubtful whether the proof is sufficient to sustain this finding, it is not material in view of the conclusion at which we have arrived. The court further found that the plaintiff in this action, while in possession of the premises, entered into a contract with the defendant for the sale of the premises, and that the defendant, claiming the title to be defective, refused to take the same. And as conclusions of law the court found: First, That on the death of the survivor of the children of Matthew Leavy, which occurred in the year 1842, whatever interest the heirs of Matthew Leavy might have had, under his will or by descent, escheated to the State, as they were at that time, aliens and incapable of inheriting. Second. That the release from the State to the plaintiff herein vested in her all the interest which the heirs of Matthew Leavy would have received if citizens. Third. That if any interest came to the brothers and sisters of Matthew Leavy, either by devise or by descent, such interest was duly foreclosed in the action brought by Davidson, and, under the sale in said action of foreclosure, became vested in the plaintiff Catharine McCabe. Fourth. That, as against the heirs of Matthew Leavy, the plaintiff has a good title to the premises in question, either through the release from the State or through the sale under the Davidson foreclosure proceeding.

The learned court also found that the possession of Gilbert Leavy and Catharine McCabe established an adverse possession thereof for thirty-six years past, and directed that the defendant perform his contracts. From this judgment this appeal is taken. It is a well-settled principle that the purchaser of land at a judicial sale is entitled to a marketable title ; and that a title open to a reasonable doubt is not a marketable title, and the court cannot make it one by passing upon a disputed question of fact or a doubtful question of law in the absence of the party in whom the outstanding right is vested. (*Fleming* v. *Burnham*, 100 N. Y., 1.)

It seems to us, under this rule, that the title tendered to the defendant was not such a one as he was bound to take. In the first place, the adverse possession claimed to have been established in Gilbert Leavy and the plaintiff depended upon a question of fact, and also

upon a doubtful question of law, because there is no evidence whatever that Gilbert Leavy was in possession of these premises under a claim of title; and there is no evidence that he claimed such title until he conveyed to the plaintiff in 1871. It is true he was in possession and collected the rent, but what his claim in respect to the title of the premises was we are in no way informed. He made no claim by virtue of a written instrument, but simply seems to have seized upon the property and converted the rents to his own use, but whether he claimed title to the same or not does not appear, except so far as it may be inferred from the fact of his collecting the rents, which it would appear he did not claim as his own, but divided the same amongst the widow of one of his brothers and his sister. What the nature of his claim was, from this evidence, it is impossible to determine, and it is clearly not that distinct claim of title which is required by the act in order to establish an adverse possession It is found by the court that upon the death of the survivor of the children of Matthew, whatever interest the heirs of Matthew might have had escheated to the State, as they were at that time aliens. But it is also found that the release from the State to the plaintiff vested in her all the interest which the heirs of Matthew would have received if citizens.

It is clear, under the rule laid down in the case of *Johnston* v. *Spicer* (107 N. Y., 185) that the act under which the plaintiff claims is unconstitutional. In the case cited the title of the act was "An act to release the interest of the people of the State of New York in certain real estate to * * * and for other purposes." This title, leaving out " and for other purposes," is identical with the act under which Catharine McCabe claims to have received her interest from the State. The court held this to be unconstitutional because it embraced, in fact, more than one subject, namely, the transfer of title to real estate and for other purposes. And then they go on and say that if they were able to overcome this objection, the court were still of the opinion " that the lack of any intelligible reference in the title to the real object of the act, and its palpable misdescription thereof, is fatal to its validity. The true object of the enactment was, obviously, to convey to some one of the heirs of George Spicer the rights of property acquired by the State through escheat or forfeiture in the real and personal property of Ellen

Spicer. No reference is made in the title to the former ownership of either George or Ellen Spicer, or to the fact that the State acquired its interest by escheat or reversion; no indication that the act was intended to transfer any interest in personal property, and no reference to the place or location of the property affected. There is absolutely no clue in the title by which the intention of any interested party would naturally be attracted to or informed of the real object of the act. The manifest intention of the constitutional provision was to require sufficient notice of the subject of proposed legislation of a private or local character to be so expressed in the title as to put not only interested parties, but also persons concerned in the proposed legislation, upon their guard, and to inform all persons reading it of the general purpose and scope of the act. While this is not required to be done by pursuing any particular formula or with much detail of specification, and great liberality of construction should be indulged in by the courts to uphold the constitutionality of legislation, yet a due regard to constitutional requirements demands that when its plain and obvious purposes are disregarded or evaded the judgment of the court should give effect to its provisions." And the court held that, for the reasons stated, the act was unconstitutional. The title to the act now under consideration being, as far as this question is concerned, the same, it falls within the rule thus laid down, and must be held to be unconstitutional, and nothing passed to the plaintiff thereby. Therefore, no matter which horn of the dilemma we take, the plaintiff did not acquire, under the proceedings in foreclosure, a good title, because, as far as the heirs of Matthew were concerned, their interest escheated to the State, and the State not being a party to the foreclosure, such interest was not cut off, and, secondly, because no right of the State has been released to Catharine McCabe by the act in question.

The judgment must be reversed and a new trial ordered, with costs to the appellant to abide the event.

Cullen, J., concurred.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.